FILED

2019 Sep-26  AM 09:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM DOSS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:** |
| | ) | |
| **REGIONS BANK,** | ) | **JURY DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff William Doss ("Plaintiff" or "Doss"), by and through his undersigned counsel of record, and files this Complaint against Defendant Regions Bank ("Defendant"). As grounds for this Complaint, Plaintiff states the following:

## JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 12117, further outlined by 42 U.S.C. § 2000e-5.

2.      The unlawful employment practices described herein were committed in Birmingham, Alabama. Birmingham is located in Jefferson County, Alabama, and, accordingly, venue lies in the United States District Court for the Northern District of Alabama, Southern Division pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), via 42 U.S.C. 12117.

## PARTIES

3.      Plaintiff is a citizen of the United States of America, over the age of nineteen (19) years, a resident of the State of Alabama who is entitled to protection pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2), and, was at all times relevant to this Complaint, an "employee" of Defendant within the meaning of 42 U.S.C. § 12111(4) and 29 U.S.C. § 2611(3).

4.      Defendant is a domestic corporation functioning within the State of Alabama, is an employer within the meaning of 42 U.S.C. § 12111(5)(A) and 29 U.S.C. § 2611(4), and, was at all times relevant to this Complaint, Plaintiff's "employer."

## ADMINISTRATIVE REMEDIES

5.      Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant.

6.      Charge number 420-2018-03566 (the "Charge") was filed on August 15, 2018.

7.      Plaintiff alleged discrimination based on disability and retaliation.

8.      Plaintiff amended the Charge on or about December 27, 2018. (Attached hereto as "**Exhibit A**").

2

9.   On or about June 6, 2018, the EEOC mailed Plaintiff a Right to Sue for the Charge.

10.   Plaintiff received the Right to Sue for the Charge on or about June 10, 2019.

11.   The Right to Sue was subsequently revoked.

12.   On or about June 25, 2019, the EEOC mailed Plaintiff a second Right to Sue for the Charge.

13.   Plaintiff received the second Right to Sue for the Charge on July 1, 2019. (Attached hereto as "**Exhibit B**").

14.   Plaintiff has now filed his Complaint within ninety (90) days of his receipt of the Right to Sue and has, therefore, exhausted all administrative remedies with respect to the Charge before filing his claims with this Court.

## FACTS

15.   Plaintiff re-alleges and incorporates paragraphs one (1) through fourteen (14) as if fully set forth herein.

16.   In 2012, Plaintiff began working for Defendant as a Systems Analyst.

17.   Throughout Plaintiff's six (6) year tenure, he received excellent annual reviews and was never reprimanded for misconduct.

18.   In August 2017, supervisor J.C. Harman ("Harman"), permitted Plaintiff to work from home due to his disability.

3

19.     Plaintiff's physical presence at Defendant's office was unnecessary for the effective performance of Plaintiff's job duties.

20.     On December 26, 2017, Plaintiff was admitted to Grandview Medical Center, suffering from kidney failure, congestive heart failure, pneumonia, MRSA, hypertension, and strep throat.

21.     Plaintiff immediately notified his direct supervisor, Terry Hermes ("Hermes"), that he had been hospitalized.

22.     Plaintiff subsequently underwent a series of dialysis treatments.

23.     Approximately one (1) week later, Plaintiff suffered a pulmonary embolism and was moved to the intensive care unit ("ICU").

24.     Plaintiff remained in the ICU for one (1) week before returning to normal care.

25.     Throughout the course of Plaintiff's three (3) week hospitalization and treatment, he was not required to remain in contact with Defendant.

26.     Plaintiff did not remain in constant contact with Defendant.

27.     Defendant never reached out to Plaintiff seeking an update on his medical status during the absence.

28.     While in the hospital, Plaintiff received numerous phone calls and cards from coworkers.

29.   Plaintiff was released from the hospital on January 15, 2018, at which time he contacted Harman to provide an update on his medical status.

30.   However, Harman was uninterested in Plaintiff's well-being and solely concerned about Plaintiff's return to work.

31.   Harman informed Plaintiff he would have to return to work at Defendant's office and could no longer work from home.

32.   Due to his medical condition, Plaintiff was unable to safely commute to Defendant's office.

33.   At the time of Plaintiff's release from the hospital, he was capable of performing all job duties from his home.

34.   As Defendant would not permit Plaintiff to work from home, Plaintiff was forced to exhaust his remaining eight (8) weeks of leave under the FMLA.

35.   Plaintiff contacted Human Resources ("HR") and was informed his FMLA would expire on March 15, 2018, with a return date of March 16, 2018.

36.   On March 16, 2018, Plaintiff attempted to return to work.

37.   However, upon arriving, Plaintiff discovered Harman failed to submit the forms to HR that would authorize Plaintiff's access to the building.

38.   As a result, Plaintiff could not enter Defendant's office building.

39.   Despite Defendant's adamance that Plaintiff return, Defendant failed to make any effort to expedite Plaintiff's authorization.

5

40.    Concerned for his position, Plaintiff drove three (3) hours to Defendant's office every day from March 19, 2018, thru March 22, 2018.

41.    To avoid any further delay in his return, Plaintiff waited in Defendant's parking lot each day and periodically called HR in hopes his access would be authorized.

42.    On March 23, 2018, Defendant finally authorized Plaintiff's return.

43.    Despite Defendant's failure to provide the necessary authorization, it was Plaintiff who was forced to use four (4) days of personal vacation time to cover the absence.

44.    On March 26, 2018, Plaintiff filed the proper documentation with HR for reasonable accommodation under the ADA.

45.    Plaintiff requested that he be permitted to work remotely from home due to his inability to and the unsafe nature of commuting to Defendant's office.

46.    On May 7, 2018, HR approved Plaintiff's reasonable accommodation request.

47.    Upon learning Plaintiff had contacted HR and received approval to work from home, Harman angrily informed Plaintiff he did not like that Plaintiff "went behind his back" and that Plaintiff "did a very uncool thing, dude."

48.    Harman was upset HR granted the accommodation that he had previously denied to Plaintiff.

6

49.    On or about June 25, 2018, Plaintiff was again hospitalized at Grandview Medical Center due to an injury to his right leg and kidney failure.

50.    As before, Plaintiff immediately informed Hermes of his hospitalization.

51.    On June 26, 2018, Hermes texted Plaintiff and acknowledged he was aware of Plaintiff's situation.

52.    Plaintiff was not subsequently instructed to remain in contact or provide periodic updates to Defendant regarding his status.

53.    Unlike Plaintiff's first hospitalization, he did not receive any phone calls or cards from coworkers.

54.    Plaintiff was later informed that Harman had directed employees not to contact Plaintiff in any way.

55.    On July 6, 2018, while Plaintiff was still in the hospital, Defendant terminated Plaintiff's employment and mailed the termination letter to Plaintiff's home.

56.    Plaintiff did not receive the termination letter until July 11, 2018, when his wife delivered it to the hospital.

57.    Defendant cited violation of the "Regions Attendance Policy" as the reason for Plaintiff's termination, specifically that Plaintiff had abandoned his job.

58.    Plaintiff did not abandon his job with Defendant.

7

59.    Plaintiff followed the same course of action he had previously taken during his first hospitalization, to notify Defendant during his second hospitalization.

60.    Defendant forced Plaintiff to exhaust his available FMLA leave following his first hospital stay, thus Plaintiff had insufficient FMLA leave for his second hospital stay.

61.    Defendant terminated Plaintiff's employment only one (1) and a half months after the ADA accommodation was granted, due to an absence that could not be covered by FMLA because Defendant forced Plaintiff to exhaust his FMLA leave instead of permitting Plaintiff to continue working from home.

## COUNT I
## ADA DISCRIMINATION

62.    Plaintiff, who suffers from kidney failure, has a disability that substantially limits one or more major life activities.

63.    Plaintiff was able to perform the essential functions of his position as a Systems Analyst at Regions Bank, with or without reasonable accommodations.

64.    Plaintiff submitted all necessary documentation and followed the proper procedures for registering his accommodations with Defendant's HR department.

65.    Plaintiff's accommodation was approved on May 7, 2018.

8

66.     Following the approval, Harman angrily informed Plaintiff he did not like that Plaintiff "went behind his back" and that Plaintiff "did a very uncool thing, dude."

67.     Harman was upset HR granted the accommodation that he had previously denied to Plaintiff.

68.     After Plaintiff was admitted to the hospital a second time due to his disability, Harman directed employees not to contact Plaintiff in any way.

69.     During his second hospitalization, Plaintiff notified Hermes immediately and in the same manner he had used during his first hospitalization.

70.     However, Plaintiff was not terminated after his first hospitalization.

71.     Hermes texted Plaintiff and acknowledged he was aware of Plaintiff's situation.

72.     Plaintiff was not subsequently instructed to remain in contact or provide periodic updates to Defendant regarding his status.

73.     Despite Plaintiff's communication regarding his second absence due to his disability, Defendant terminated Plaintiff's employment on July 7, 2018.

74.     Plaintiff had sufficient vacation leave to cover his hospital stay.

75.     Therefore, Plaintiff's disability and reasonable accommodation were, at minimum, a motivating factor in Defendant's adverse treatment and subsequent termination of his employment.

9

76.     As a result of Defendant's conduct, Plaintiff was deprived of income and subjected to mental, emotional, and physical distress, pain, and suffering.

## COUNT II
## ADA RETALIATION

77.     Plaintiff exercised a protected right under the ADA when he requested a reasonable accommodation for his disability on or about March 26, 2018.

78.     On May 7, 2018, HR approved Plaintiff's reasonable accommodation.

79.     Following the approval, Harman angrily informed Plaintiff he did not like that Plaintiff "went behind his back" and that Plaintiff "did a very uncool thing, dude."

80.     Harman was upset HR granted the accommodation that he had previously denied to Plaintiff.

81.     After Plaintiff was admitted to the hospital a second time due to his disability, Harman directed employees not to contact Plaintiff in any way.

82.     Plaintiff notified Hermes of his hospitalization immediately and in the same manner he had used during his first hospitalization.

83.     However, Plaintiff was not terminated for failure to notify Defendant after his first hospitalization.

84.     Hermes texted Plaintiff and acknowledged he was aware of Plaintiff's situation.

10

85.     Plaintiff was not subsequently instructed to remain in contact or provide periodic updates to Defendant regarding his status.

86.     Despite Plaintiff's communication with Hermes regarding his second absence due to hospitalization for his disability, Defendant terminated Plaintiff's employment on July 7, 2018.

87.     Defendant cited job abandonment as its reason for terminating Plaintiff's employment.

88.     Plaintiff did not abandon his job.

89.     Defendant terminated Plaintiff only one (1) and a half months after it granted his reasonable accommodation.

90.     Plaintiff had sufficient vacation leave to cover his hospital stay.

91.     As a result of Defendant's conduct, Plaintiff was deprived of income and subjected to mental, emotional, and physical distress, pain, and suffering.

## COUNT III
## FMLA INTERFERENCE

92.     Defendant is an employer under the applicable provisions of the FMLA, and was, in fact, Plaintiff's employer at all times relevant to this cause of action.

93.     Plaintiff worked for Defendant for six (6) years.

94.     Plaintiff was employed by Defendant for more than twelve (12) months prior to the start of his FMLA leave.

95.     Plaintiff worked more than one-thousand two-hundred fifty (1,250) hours during the twelve (12) months prior to the start of leave.

96.     Defendant employed more than fifty (50) employees within seventy-five (75) miles of Plaintiff's worksite for each working day, during each of the twenty (20) or more calendar workweeks in the current and/or preceding calendar year.

97.     On December 26, 2017, Plaintiff was admitted to Grandview Medical Center, suffering from kidney failure, congestive heart failure, pneumonia, MRSA, hypertension, and strep throat.

98.     Plaintiff immediately notified his direct supervisor, Hermes, that he had been hospitalized.

99.     Plaintiff subsequently underwent a series of dialysis treatments.

100.    Approximately one (1) week later, Plaintiff suffered a pulmonary embolism and was moved to ICU.

101.    Plaintiff remained in the ICU for one (1) week before returning to normal care.

102.    Plaintiff was released from the hospital on January 15, 2018, at which time he contacted Harman to provide an update on his medical status.

103.    Harman informed Plaintiff he would have to return to work at Defendant's office and could no longer work from home.

12

104.   As a result, Plaintiff was forced to exhaust his remaining eight (8) weeks of leave under the FMLA.

105.   At the time of Plaintiff's release from the hospital, he was capable of performing all job duties from his home.

106.   On or about June 25, 2018, Plaintiff was again hospitalized at Grandview Medical Center due to an injury to his right leg and kidney failure.

107.   As before, Plaintiff immediately informed Hermes of his hospitalization.

108.   On July 6, 2018, while Plaintiff was still in the hospital, Defendant terminated Plaintiff's employment and mailed the termination letter to Plaintiff's home.

109.   Plaintiff did not receive the termination letter until July 11, 2018, when his wife delivered it to the hospital.

110.   Defendant cited violation of the "Regions Attendance Policy" as the reason for Plaintiff's termination, specifically that Plaintiff had abandoned his job.

111.   Plaintiff did not abandon his job with Defendant.

112.   Defendant had forced Plaintiff to exhaust his available FMLA leave, thus he did not have sufficient FMLA leave to cover his second hospital stay.

113.   Defendant interfered with benefits to which Plaintiff was entitled under the FMLA.

13

114. Defendant's interference with Plaintiff's rights under the FMLA violated the FMLA, 29 U.S.C. § 2615(a)(1), which states it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this title."

115. Defendant's actions in forcing Plaintiff to exhaust his FMLA leave and subsequently terminating his employment when he did not have FMLA leave to cover his absence, interfered with Plaintiff's rights under the FMLA.

**WHEREFORE**, Plaintiff respectfully requests this Court grant to Plaintiff the following:

A.   A permanent injunction enjoining Defendant, Regions Bank, its officers, successors, assigns and all persons in active concert or participation with it, from engaging further in its discriminatory treatment of disabled employees;

B.   An Order that Defendant, Regions Bank, institute and carry out policies, practices, and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a substantive policy against disability discrimination and retaliation in the work place;

C.   Damages for mental and emotional distress in an amount determined by a jury;

D.   Back pay for lost income and any other compensatory damages;

E.   Reinstatement, or front pay if the Court finds reinstatement to be impracticable;

F.   Liquidated damages equal to the amount awarded in back pay;

14

G.      Punitive damages in an amount to be determined by a jury;

H.      A reasonable attorneys' fee;

I.      Plaintiff's costs and expenses;

J.      Interest on all monies owed; and

K.      Any other relief the Court deems just and appropriate.


Respectfully submitted this 25th day of September 2019.

Anthony D. Michel (ASB-6809-064M)
*Attorney for Plaintiff, William Doss*


**WRADY, MICHEL & KING**
505 20th Street North, Suite 1650
Birmingham, AL 35203
P: (205) 980-5700
F: (205) 994-2819
anthony@wmalabamalaw.com

## JURY DEMAND

Plaintiff demands trial by struck jury.


Respectfully submitted,

*Attorney for Plaintiff, William Doss*


## PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:

Regions Bank
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104